IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LKQ CORPORATION and KEYSTONE AUTOMOTIVE INDUSTRIES, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 18-225 (MN) ) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY and SECRETARY KIRSTJEN NIELSEN, in her official capacity | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Elizabeth S. Fenton, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE; Barry F. Irwin, Reid P. Huefner, Chris Eggert, IRWIN IP, Chicago, IL 60606 – attorneys for Plaintiff

David C. Weiss, United States Attorney, Jennifer Hall, Assistant United States Attorney, Wilmington, DE; Mark Lacedonia, Tate Keenan, Office of Chief Counsel, U.S. Customs and Border Protection, Department of Homeland Security, Washington, DC – attorneys for Defendants

February 22, 2019
Wilmington, Delaware

*Maryellen Noreika* [signature]

NOREIKA, U.S. DISTRICT JUDGE:

Before the Court is the motion (D.I. 9) of Defendants the United States Department of Homeland Security and its Secretary, Kirstjen Nielsen, to dismiss the Complaint (D.I. 1) filed by Plaintiffs LKQ Corporation and Keystone Automotive Industries, Inc. (collectively "LKQ" or "Plaintiffs") for lack of subject matter jurisdiction and failure to state a claim. For the reasons discussed below, the Court will GRANT Defendants' motion.

I.  **BACKGROUND**

Since April of 2017, the United States Customs and Border Protection ("CBP"), an agency within Defendant, United States Department of Homeland Security, has executed more than 165 seizures of LKQ replacement automotive grilles ("Repair Grilles") because of alleged infringement of U.S. trademarks. (D.I. 1 at ¶¶ 2-4). Seizures have occurred at the Port of Savannah, Georgia, Port of Long Beach, California, and Port of International Falls, Minnesota. (*Id.* ¶ 4). For each seizure, CBP issued written notification to LKQ identifying the property seized and outlining the processes by which Plaintiff could challenge the seizure. (*Id.* ¶ 5; D.I. 11, Ex. 3).[1] The notices explain the petition option as follows:

> **Petition**: You may file a petition with this office within 30 days from the date of this letter in accordance with title 19 United States Code (U.S.C.), section 1618 (19 U.S.C. §1618) and title 19, Code of Federal Regulations (C.F.R.), section 171.1 and 171.2 (19 C.F.R. §§ 171.1, 171.2), seeking remission of the forfeiture. The petition does not need to be in any specific form, but it must describe the property involved, identify the date and place of the seizure, include all the facts and circumstances which you believe warrant relief from

---

[1] Exhibit 3 to the Motion to Dismiss is an April 27, 2017 letter to Plaintiffs identifying the seized property and Plaintiffs' options relating to it. The Court reviews these letters in connection with the motion to dismiss because this action largely draws from, and directly discusses, the contents of the letters. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) (stating "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

> forfeiture, and must include proof of your interest in or claim to the property.
>
> \* \* \*
>
> If you are dissatisfied with the petition decision (initial petition or supplemental petition), you will have an additional 60 days from the date of the initial petition decision or 60 days from the date of the supplemental petition decision, or such other time as specified by the Fines, Penalties and Forfeitures Officer to file a claim to the property, along with the required cost bond, requesting referral of the matter to the U.S. Attorney's Office for judicial action.
>
> \* \* \*
>
> At any point prior to the forfeiture of the property, you may request a referral to the U.S. Attorney by filing a claim and cost bond. *Please see section 4 of this letter for information on how to file a claim and cost bond.* If you take such action after filing a petition for relief, your pending petition will be withdrawn from consideration.

(D.I. 11, Ex. 3 at 2-3). After receiving the notices, LKQ submitted at least 81 petitions for remission or mitigation. (D.I. 1 ¶ 6). Those petitions were "referred to the Chief, Intellectual Property Rights Branch [of the CBP] for a recommendation." (*Id.*, Ex. C).

Plaintiffs characterize the petitions by category: (1) grilles that were seized but then deemed to be returned "because LKQ was licensed to make those grilles under its design patent license agreements;" (2) grilles that were seized and then deemed to be returned, but for which CBP "alleges it had probable cause at the time to seize because the Automakers told CBP that the grilles violated their rights;" (3) "grilles that CBP now acknowledges are not counterfeit but that CBP, instead, now alleges are confusingly similar to the asserted mark;" (4) "grilles that CBP maintains are allegedly counterfeit;" (5) grilles "that have been seized on the basis that they are counterfeit but that CBP has not yet formalized its seizure decision;" and (6) grilles for which Plaintiffs have requested referral to the U.S. Attorney. (*Id.* ¶¶ 6, 8). At the time of the Complaint, the grilles in the first two categories were subject to storage fees and "hold-harmless" agreements

"disallowing any future claims against the government related to the improper seizures." (D.I. 1 ¶¶ 7, 9). It is undisputed, however, that CBP later "agreed to remit these grilles without those conditions." (D.I. 10 at 8; D.I 16 at 17). Petitions relating to at least thirteen (13) seizures have been withdrawn, filed as claims, and referred to the U.S. Attorneys' offices in the districts where the original seizures took place. (D.I. 10 at 8-9).

On February 2, 2018, Plaintiffs filed their Complaint in this Court. (D.I. 1). The Complaint contains seven counts alleging the following: violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) (Counts I-V), excessive fines in violation of the Eighth Amendment (Count VI); and violation of Plaintiffs' due process rights in violation of the Fifth Amendment (Count VII). (*Id.*). Defendants filed their motion to dismiss (D.I. 9) on May 9, 2018, asserting pursuant to Rule 12(b)(1) that the Court lacks subject matter jurisdiction for Counts I through VI, and pursuant to Rule 12(b)(6) that Counts VI and VII fail to state a claim upon which relief may be granted. (D.I. 10 at 10-20). Plaintiffs oppose the motion.

## II. <u>LEGAL STANDARD</u>

A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (citing *Conley v. Gibson* 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2)).

### A. Standard Pursuant to Rule 12(b)(1)

"If the court determines . . . it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Motions brought under Rule 12(b)(1) for lack of subject matter jurisdiction may present either a facial or factual challenge to the court's jurisdiction. *Lincoln Ben. Life Col. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). A challenge is facial when a motion

to dismiss is filed prior to an answer and asserts that the complaint is jurisdictionally deficient on its face. *Cardio-Medical Assoc., Ltd. V. Crozer-Chester Medical Center*, 721 F.2d 68, 75 (3d Cir. 1983). In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. *Lincoln*, 800 F.3d at 105 ("In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff"). A plaintiff bears the burden of establishing subject matter jurisdiction. *Id.*

### B. Standard Pursuant to Rule 12 (b)(6)

When dismissal is sought under Rule 12(b)(6), the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is facially plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Further, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of the plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotations omitted).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The

4

court may grant a motion to dismiss only if, after "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, [the] plaintiff is not entitled to relief." *Id.* "In deciding a Rule 12(b)(6) motion, a court must consider *only* the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (emphasis added).

### III. ANALYSIS

Defendants have challenged each of the Complaint's seven Counts under either Rule 12(b)(1) or 12(b)(6). Defendants argue that Counts I, II, III, IV, V, and VI must be dismissed because Plaintiffs have failed to establish that the Court has subject matter jurisdiction over those claims, and that Counts VI and VII must be dismissed because Plaintiffs have failed to state a claim upon which relief may be granted under Rule 12(b)(6).

#### A. The Court Lacks Subject Matter Jurisdiction Over Counts I – VI

##### 1. Counts I, II, III

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Under the APA, Congress has waived sovereign immunity over actions "seeking relief other than monetary damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702. This waiver, however, does not apply when (1) "such an action 'is committed to agency discretion by law,'" *State of New Jersey v. United States*, 91 F.3d 463, 470 (3d Cir. 1996) (citing 5 U.S.C. § 701(a)(2)), (2) there is "other adequate remedy in a court," 5 U.S.C. § 704, or (3) the challenged action is not a "final agency action." *Id.* Plaintiffs bear the burden of establishing that none of the

5

exceptions apply to their claims. *See Mortensen v. First Federal Sav. And Loan Ass'n*, 549 F.2d 884, 891.

Counts I, II, and III ask the Court to review determinations made by the CBP about petitions for remission.[2] Count I alleges "the issuance of CBP's final agency decision in response to LKQ's petitions . . . constitutes 'agency action' under the APA" and challenges the decision as "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law because (a) the trademark doctrine of functionality renders the Recorded Marks inapplicable to LKQ's Repair Grilles in the aftermarket parts market; and (b) the Repair Grilles are authorized by law under the repair doctrine." (D.I. 1 ¶¶ 79-80). Count II challenges "CBP's interpretation and application of the extent of LKQ's design patent license agreement" alleging "CBP [] ignored the plain text of the license agreements and the tenets of design patent law." (*Id.* ¶¶ 84-85). Count III challenges "CBP's interpretation and application of the Lanham Act" in its petition determinations. (*Id.* ¶¶ 89-91).

The Court does not have the authority to review discretionary actions that are "committed to agency discretion by law." *State of New Jersey*, 91 F.3d at 470 (citing 5 U.S.C. § 701(a)(2)). A petition for remission "does not serve to contest the forfeiture, but rather is a request for an executive pardon of the property based on the petitioner's innocence." *Ibarra v. United States*, 120 F.3d 472, 475 (4th Cir. 1997) (citing *United States v. Vega*, 72 F.3d 507, 514 (7th Cir.1995)); *see also Schrob v. Catterson*, 948 F.2d 1402, 1412 n.9 (3d Cir. 1991) (calling the petition process

---

[2] It is not evident how many grilles/petitions fall into each of the categories described. To the extent, however, that certain petitions for remission have neither been granted nor denied and remain within the review process of the CBP IP branch, those petitions are not reviewed here. *See Ibarra*, 120 F.3d at 476 (where a plaintiff's petition was pending when the action was commenced "the district court did not have jurisdiction to consider her claims.").

a remedy that "allows the government and claimant to resolve the dispute informally, rather than in a judicial forfeiture proceeding"); *In re Sixty Seven Thousand Four Hundred Seventy Dollars ("In re $67470")*, 901 F.2d 1540, 1543 (11th Cir. 1990) ("remission of forfeitures is neither a right nor a privilege, but an act of grace."). Moreover, federal courts have held that "once the Government initiates forfeiture proceedings, the district court is divested of jurisdiction," and "remains without jurisdiction during the pendency of the proceedings unless the claimant timely files a claim and cost bond." *See e.g. Ibarra*, 120 F.3d at 745-76. Even after an administrative determination has been reached, courts generally have no power to review that decision. *Schrob*, 948 F.2d at 1412 n.9; *see also Yskamp v. DEA*, 163 F.3d 767, 770 (3d Cir. 1998) ("appeal from a petition for remission or mitigation is limited to assuring that the [administrative agency] complied with statutory and procedural requirements"); *In re $67470*, 901 F.2d at 1543 ("federal common law consistently has held that federal courts lack jurisdiction to review the merits of a forfeiture decision" by an administrative agency acting within its discretion).

The remission statute provides the CBP with wide discretion to make a determination on remission or mitigation. 19 U.S.C. § 1918[3]; *see also Farrace v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, No. 14-468 (GMS), 2015 WL 2265384, at *3 (D. Del. May 13, 2015) ("The court lacks jurisdiction to review ATF's rulings on Farrace's petition for remission or his request for reconsideration. These decisions fall within the agency's executive discretion, akin to

---

[3] "Whenever any person interested in [seized goods], files with . . . the Commissioner of U.S. Customs and Border Protection . . . the Commissioner of the U.S. Customs and Border Protection . . . if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto." 19 U.S.C. § 1618.

7

a pardon."). Here, Plaintiffs do not allege that CBP failed to comply with statutory or procedural requirements; but instead, ask the Court to review the legal underpinnings of the CBP's decision on petitions and to order "that all currently seized and imminently-to-be-forfeited Repair Grilles are not counterfeit and do not infringe any of the Recorded Trademarks." (D.I. 1 at 37). Given the statutory language affording the CBP discretion with petitions for remission, as well as precedent finding that such discretionary decisions are unreviewable absent allegations of procedural or statutory violations, the Court finds Counts I, II, and III are barred under the APA and thus the Court has no subject matter jurisdiction over these claims.

Moreover, even assuming *arguendo* that Plaintiffs could challenge the CBP's refusal to remit their Repair Grilles, the Court also lacks jurisdiction over Counts I, II and III because Plaintiffs have an alternative judicial remedy. "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Mass.*, 487 U.S. 879, 903 (1988). The Third Circuit has held that the "other adequate remedy" threshold is crossed where a party is provided access to judicial review even after an administrative determination has been made. *See Turner v. Secretary of U.S. Dept. of Housing and Urban Dev.*, 449 F.3d 536, 539-40 (3d Cir. 2006). In *Turner*, the court reviewed a claim against the United States Department of Housing and Urban Development ("HUD") for an adverse housing discrimination decision against Plaintiff. *Id.* at 537-38. The court noted that the plaintiff, following the decision, was informed by HUD that the Fair Housing Act provided a private right of action against those who allegedly discriminated against her, and plaintiff then pursued such an action before also suing HUD under the APA. *Id.* at 538. The Third Circuit held that the alternative procedure was an adequate remedy and barred the district court from undergoing judicial review of HUD's original decision under the APA. *Id.* at 540-41.

Here too, Plaintiffs have had an effective remedy as outlined in the judicial forfeiture procedure of the seizure notice from CPB. Specifically, the notices state "[i]f you are dissatisfied with the petition decision (initial petition or supplemental petition), you will have an additional 60 days from the date of the initial petition decision or 60 days from the date of the supplemental petition decision, or such other time as specified by the Fines, Penalties and Forfeitures Officer to file a claim to the property, along with the required cost bond, requesting referral of the matter to the U.S. Attorney's Office for judicial action." (D.I. 11, Ex. 3 at 2-3). The procedure here not only provides an alternative route, but also requires the CBP to refer the case to the U.S. Attorney who must either bring an *in rem* forfeiture proceedings against the goods or return the goods to Plaintiffs. 19 U.S.C. § 1608.[4] Plaintiffs argue that "[w]ith CBP having issued determinations documenting its misunderstanding of trademark law, LKQ's only means of ensuring a substantive resolution of this dispute was to file this declaratory judgment action." (D.I. 16 at 11). Plaintiffs, however, tacitly recognize that a judicial forfeiture procedure still exists, arguing that it "does not provide LKQ with *adequate* judicial relief." (*Id.*) (emphasis added). Thus, even if (as Plaintiffs allege) CBP misunderstands trademark law, as alleged, the agency's determination is not the last word. Following CBP's determination not to remit certain Repair Grilles, Plaintiffs can compel referral to the U.S. Attorney in the district of the original seizure. This is an alternative judicial remedy and provides Plaintiffs with judicial review of trademark laws as they pertain to the seized goods. That Plaintiffs may not prefer the venue or process by which the judicial forfeiture proceedings would follow is of little moment to the Court, which is bound by the statutory scheme

---

4   "Upon the filing of such claim [of seized goods], and the giving of a bond to the United States . . . customs officer shall transmit such claim and bond, with a duplicate list and description of the articles seized, to the United States attorney for the district in which seizure was made, who shall proceed to a condemnation of the merchandise or other property in the manner prescribed by law." 19 U.S.C. § 1608.

codified in the customs laws and was provided by notice to the Plaintiffs. *See Turner*, 449 F.3d at 541 ("[a] legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff."). A clear and adequate alternative judicial forum exists to determine whether LKQ's goods should be forfeited, and thus this Court does not have subject matter jurisdiction over Counts I, II, or III.

### 2. Counts IV and VI

The Constitution provides that the judicial power of the federal courts shall only extend to actual "Cases" and "Controversies." U.S. Const., Art. III, § 2. A court's "judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (internal citations and quotations omitted). It is not enough that a case or controversy existed at the time of the filing, but rather "[t]he rule in federal cases is that an actual controversy must be extant at all stages of review." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Counts IV and VI of the Complaint assert claims regarding the imposition of conditions on the remission of certain LKQ goods. Specifically, Count IV challenges "CBP's decision to impose conditions on the release of [repair grilles]" as a violation of the APA and Count VI raises an Eighth Amendment excessive fines claim for the same conduct. (D.I. 1 at 33-35). There is no dispute that the conditions previously imposed on the return of repair goods are no longer in place. (D.I. 10 at 13; D.I. 16 at 17). Instead, Plaintiffs argue the question is not mooted because "[i]t is foreseeable that . . . CBP will re-institute demands for such 'forfeiture amounts' as conditions for the release of those goods," and cites a D.D.C. case emphasizing its point. (D.I. 16 17-18). In the Third Circuit, however, "[t]he capable-of-repetition doctrine is a narrow exception that 'applies only in exceptional situations' where '(1) the challenged action is

in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). Here, Plaintiffs' provide a cursory rebuttal to the mootness question and repetition doctrine. After review of the facts provided, the Court cannot find sufficient basis to apply this narrow exception. There is no indication that conditions applied would be too short in duration to be litigated fully had they not been removed by the CBP and the government has argued "[it] has provided LKQ with no reason to think . . . that it would subsequently condition the[] release [of grilles] on a monetary payment." (D.I. 18 at 9). Moreover, the Court does not expect the CBP to change its position and again impose fees and conditions on Plaintiffs following the dismissal of this action. Thus, the Court finds that Counts VI and VI are moot and thus it lacks subject matter jurisdiction over them.

        3.      Count V

The APA allows review of "final agency action[s]." 5 U.S.C. § 704. Courts have identified two factors for determining whether an action is final: (1) "the action must mark the 'consummation' of the agency's decisionmaking process" and "not be of a merely tentative or interlocutory nature;" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Ocean County Landfill Corp. v. EPA*, 631 F.3d 652, 655 (3d Cir. 2011) (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations omitted)). Further, the Third Circuit has also considered:

> 1) whether the decision represents the agency's definitive position on the question; 2) whether the decision has the status of law with the expectation of immediate compliance; 3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; 4) whether the decision involves a pure question of law that does not require further factual development; and 5)

11

whether immediate judicial review would speed enforcement of the relevant act.

*Id.* (citing *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69 (3d Cir.2003)). Based on the facts alleged, the seizures at issue are not "final agency actions." This is particularly so given the Third Circuit precedent recognizing that "[its] cases have interpreted pragmatically the requirement of administrative finality, focusing on whether judicial review at the time will disrupt the administrative process." *Delaware Riverkeeper Network v. Sec'y of Pennsylvania Dept. of Environ. Protection*, 870 F.3d 171, 176 (3d Cir. 2017). Here, judicial review of the seizures would disrupt the administrative process. The CBP has statutory authority to inspect and seize imported goods which it believes[5] violate the trademark laws. *See* 19 U.S.C. §§ 1499(2), 1595a(c)(2)(C), 1526. Following the seizure of the grilles at issue, Plaintiffs were given notice and provided with options for challenging the seizure. Under no reasonable interpretation of "finality" can the seizure of goods, which sets off a codified procedure for forfeiture or petitions, be considered the "consummation" of an "agency's decisionmaking process." *Ocean County*, 631 F.3d at 655. Seizures do not determine the rights or obligations of LKQ, nor do legal consequences flow from the decision to seize the goods under the customs laws. The seizures themselves are not final agency actions, and the APA does not provide a waiver of sovereign immunity under which Plaintiff can bring these claims. Thus, the Court cannot exert subject matter jurisdiction over a challenge thereof, Count V must be dismissed.

---

[5] The federal customs regulations provide that "[a]ny articles of foreign or domestic manufacture imported into the United States bearing a mark or name copying or simulating a recorded mark or name shall be denied entry" and define "a 'copying or simulating' trademark" as "one which may so resemble a recorded mark or name as to be likely to cause the public to associate the copying or simulating mark or name with the recorded mark or name." 19 C.F.R. §§ 133.22(a)-(b). The Court understands this regulation to provide fairly broad discretion for custom agents to make an initial decision as to whether seizure is appropriate.

## B. Count VII Fails to State a Claim Upon Which Relief May Be Granted

The Due Process clause of the Fifth Amendment provides that "[n]o person . . . shall be deprived of life, liberty, or property without due process of law." U.S. Const., Amdt 5. "A fundamental requirement of due process is 'the opportunity to be heard'" in "a meaningful time and a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). Courts have, however, found that a "forfeiture proceeding, without more, provides the postseizure hearing required by due process" necessary to protect one's interest in seized goods, *United States v. Von Neumann*, 474 U.S. 242, 249 (1986), and "the proper place to litigate the legality of [a] seizure . . . is in the forfeiture proceedings and not elsewhere," *Castleberry v. ATF*, 530 F.2d 672, 675 (5th Cir. 1976).

Count VII contends that Plaintiffs' due process rights are being violated because: (1) the actions of CBP require Plaintiffs to "decide whether to continue accruing seizures . . . or to subject [themselves] . . . to the risk of lost profits or even being forced to shut down significant portions of [their] business and ceasing to compete," (D.I. 1 ¶ 107), (2) "LKQ's Repair Grilles are not only authorized by the confidential design patent license agreements that LKQ has entered into with Ford and Chrysler, but the Repair Grilles are also authorized as a matter of law due to the trademark doctrines of functionality and the right of repair," (*Id.* ¶ 108), and (3) CBP's "application of the Lanham Act is contrary to the statute and the law, and allows CBP, without any judicial determination or the oversight of an Article III court or jury, to penalize innocent parties, such as LKQ" (*Id.* ¶ 109). Furthermore, Plaintiffs allege that CBP has violated their due process rights "by detaining and then seizing LKQ's lawful Repair Grilles based solely on input from direct competitors" and because "CBP officials are . . . beholden to the policy objectives of the President." (*Id.* ¶¶ 72-73).

In its response to the motion to dismiss, Plaintiffs make three arguments to support their Due Process claim: (1) "CBP's seizure and forfeiture process as applied to alleged trademark infringement violates due process as an unconstitutional mechanism by which CBP is deciding disputes of private rights between private parties without prior judicial determination;" (2) "CBP's delay in forwarding LKQ's numerous requests for judicial forfeiture constitutes violation of LKQ's due process rights."; and (3) LKQ may not be "afforded an opportunity to challenge the Customs on the merits" because an AUSA may elect to return the Repair Grilles in lieu of a judicial forfeiture action. (D.I. 16 at 18-20).

Plaintiffs' first argument in essence asks the Court to find the forfeiture statute unconstitutional because LKQ was not afforded a "prior judicial determination" before the Repair Grilles were seized by CBP. Due process, however, does not require a pre-seizure hearing for goods detained at the border. *See United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 562 n.12 (1983) ("Such a requirement would make Customs processing entirely unworkable"); *see also United States v. Thirty-Six (36) 300CC on Road Scooters Model WF300-SP*, No. 11-130, 2012 WL 4483281, at *5 (S.D. Ohio Sept. 27, 2012) ("The Supreme Court has been clear that due process does not require federal customs officials to conduct a hearing before seizing items subject to forfeiture."). Indeed, a "forfeiture proceeding, without more, provides the postseizure hearing required by due process" necessary to protect a property owners interest in the seized goods. *Von Neumann*, 474 U.S. at 249. As identified in the CBP's seizure notice, the Plaintiffs were informed of the seizures and provided options for challenging the CBP's action, either administratively or judicially. Whereas Plaintiffs are currently pursing both options, the Court finds that these proceedings adequately protect the Plaintiffs' rights in accordance with the Due Process clause of the Fifth Amendment.

Plaintiffs' second argument likewise fails because the Complaint does not request a remedy this Court can provide. Plaintiff argues its Due Process rights were violated because the CBP delayed in referring cases to U.S. Attorneys' offices. (D.I. 16 at 20). A party, however, may itself initiate a challenge to a seizure in a judicial forfeiture action by the government by formal or informal means. *Von Neumann*, 474 U.S. at 244 at n.3. The Supreme Court in *Von Neumann* stated that "[t]he claimant may trigger the Government's initiation of forfeiture proceedings" by "fil[ing] an equitable action seeking an order compelling the filing of the forfeiture action or return of the seized property." *Id.* A review of the Complaint here shows that Plaintiffs do not request that this Court compel the government to file a forfeiture action or return the Repair Grilles, and instead requests a broad declaration of rights with respect to seizures and petitions for remission. Moreover, any delay between an informal request for referral of a case to a local U.S. Attorney's office and the CBP's execution of that referral could have been averted or overcome by Plaintiffs' filing of an equitable action asking the Court to compel action. Plaintiffs elected instead to wait, and the Court is now aware through the motion to dismiss that no requests for referral are outstanding. (D.I. 10 at 9). Even accepting the well-plead facts as true, Plaintiff has failed to state a due process claim relating to the CBP's delay in referring cases.

Plaintiffs' final argument relies on speculation and conjecture. LKQ argues "whether such a forfeiture action would ever commence, whether LKQ will be afforded an opportunity to challenge Customs on the merits, is left to the sole discretion of the Local AUSA" and "LKQ *does not* 'ha[ve] the ability to trigger those proceedings.'" (D.I. 16 at 19). First, as discussed above, LKQ has the ability to trigger judicial forfeiture proceedings through formal or informal means and has already done so on a number of occasions. Second, whether a Fifth Amendment Due Process claim could arise in a situation where seized goods are referred to a U.S. Attorney's office

that later elects not to pursue a judicial forfeiture action is a hypothetical question not properly before the Court. The Court's authority under Article III extends only to "real and substantial" cases and controversies, which prevents it from issuing "an opinion advising what the law would be upon a hypothetical state of facts." *Rice*, 404 U.S. at 246. For reasons outlined above, the Court finds that the Count VII fails to state a Due Process claim upon which relief may be granted and thus must be dismissed.

## IV. <u>CONCLUSION</u>

For the reasons discussed above, Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) is granted. An appropriate order will follow.